**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| OLIVE F. GATLING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2879 |
| | § | |
| CITIMORTGAGE, INC. and | § | |
| FEDERAL NATIONAL | § | |
| MORTGAGE ASSOCIATION, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Olive Gatling, filed this suit after the nonjudicial foreclosure on her home by her mortgage lender, CitiMortgage, Inc. The Federal National Mortgage Association ("Fannie Mae") bought the home at the foreclosure sale. Gatling sued both CitiMortgage and Fannie Mae in Texas state court, alleging that CitiMortgage lacked authority to foreclose. After the defendants' timely removal, (Docket Entry No. 1), this court granted the defendants' motion to dismiss Gatling's amended complaint, without prejudice and with leave to amend certain claims, which Gatling did. (Docket Entry Nos. 25, 28).

The defendants have moved for summary judgment on all of Gatling's claims. (Docket Entry No. 32). Gatling has responded, the defendants have replied, and Gatling has surreplied.[1] (Docket Entry Nos. 33, 36, 39).

---

[1] Gatling has moved to strike the defendants' argument that she refuses to pick up her certified mail. (Docket Entry No. 38). The motion to strike is denied. The defendants' argument is legal argument and, in any event, is unnecessary to the court's analysis that follows. The motion to strike is denied.

Gatling also seeks leave to file a surreply. (Docket Entry No. 38). The court will allow the surreply, noting that the defendants do not oppose it. In the future, unless the court on its own asks for a surreply, no surreplies from either party will be allowed.

After careful consideration of the motion and related filings, the record, and the applicable law, this court grants in part and denies in part the defendants' motion.  Specifically, summary judgment is:

1. granted to dismiss Gatling's cause of action against Fannie Mae under the Texas Deceptive Trade Practices Act ("DTPA");

2. granted to dismiss Gatling's causes of action against CitiMortgage for wrongful foreclosure and for violations of the federal Fair Debt Collection Practices Act ("FDCPA") and the DTPA;

3. denied on Gatling's causes of action against CitiMortgage under the Texas Debt Collection Act ("TDCA"); and

4. granted to deny Gatling's requests for exemplary damages and attorney's fees (to the extent that Gatling seeks fees for her work as a pro se litigant).

The court also finds that Gatling has stated a colorable breach-of-contract claim based on CitiMortgage's failure to provide notice as required under the Deed of Trust and Texas law.  By **September 17, 2012**, Gatling may file a third amended complaint against CitiMortgage asserting: (1) causes of action under the TDCA based on CitiMortgage's alleged failure to provide notices of default and intent to accelerate, as required under Texas law (as alleged in the second amended complaint); and (2) a cause of action for breach of contract based on CitiMortgage's failure to provide the notice required under §§ 15 and 22 of the Deed of Trust.  By **October 19, 2012**, CitiMortgage may move for summary judgment on the breach-of-contract claim, if appropriate, so long as its motion is not based on the theory that it was not required to provide new notices of default and intent to accelerate after Gatling received the approved and executed loan-modification

2

agreement.  If CitiMortgage does not file such a motion by October 19, the court will set the case for docket call and trial.

Gatling is ordered to continue depositing $400.00 into the court's registry by the first day of each month during the pendency of this lawsuit.

The reasons for these rulings are explained below.

## I.     Background and Procedural History

This court's previous opinion outlined in detail the factual background of this case.  (*See* Docket Entry No. 25, at 2–8).  That background is largely unchanged by the parties' summary-judgment evidence.  The relevant facts are set out below for clarity and thoroughness.

On June 4, 2007, Olive Gatling and CitiMortgage entered into a mortgage-loan agreement for her Houston home.  (Docket Entry No. 28, ¶ 8).  The original note ("Original Note") obligated Gatling to make monthly payments of $823.51 to CitiMortgage on the first day of each month beginning August 1, 2007.  (Docket Entry No. 32, Ex. A.2, ¶ 3).  The Original Note stated that Gatling would be in default if she did not  "pay the full amount of each monthly payment on the date it is due[.]"  (*Id.*, ¶ 6(B)).  The Deed of Trust incorporated the Original Note by reference, (*see* Docket Entry No. 32, Ex. A.1, at 2 (definition (F))), and required Gatling to pay those amounts owed under the Original Note, (*id.*, § 1).  It also required CitiMortgage to provide notices of default and notice of intent to accelerate:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.

3

(*Id.*, § 22).

Gatling timely paid her mortgage until mid-2009, when she "could no longer maintain payments" due to economic hardship. (Docket Entry No. 28, ¶ 9). Gatling sought assistance under the federal government's Home Affordable Modification Program ("HAMP"). Despite problems processing Gatling's HAMP application, (Docket Entry No. 25, at 3; *see also* Docket Entry No. 28, ¶¶ 10–11), she was approved to apply for a permanent loan modification under HAMP by late 2010.

On December 28, 2010, CitiMortgage mailed Gatling the proposed permanent Home Affordable Modification Agreement ("Modified Agreement"). (Docket Entry No. 1, Ex. D(A), at 1; *see also* Docket Entry No. 28, ¶ 12). The Modified Agreement stated that Gatling would "be in default if [she did] not comply with the terms of the Loan Documents, as modified by this Agreement." (Docket Entry No. 32, Ex. A.3, ¶ 3(D)). The Modified Agreement decreased Gatling's monthly amount under the Original Note from $823.51 to approximately $761.88, (*see id.*, ¶ 3(C)), but it did not otherwise change the Original Note's definition of default. The Modified Agreement also stated "[t]hat all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents[.]" (*Id.*, ¶ 4(F)).

Before the Modified Agreement would go into effect, three preconditions had to be met. The third precondition stated:

> I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.

4

(*Id.*, ¶ 2(C)).  If these preconditions were met and Gatling's previous representations remained true, then

> the Loan Documents will automatically become modified on **01/01/11** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  The Loan Documents will be modified and the first modified payment will be due on **02/01/11**.

(*Id.*, ¶ 3 (emphasis in original)).

Gatling signed and returned two copies of the Modified Agreement the next day, December 29.  (*Id.*, at 5;  *see also* Docket Entry No. 28, ¶ 12).  She "made the first modified loan payment in February 2011 in the amount specified on the modified agreement even though" she had not yet received CitiMortgage's signed copy of the Modified Agreement.  (Docket Entry No. 28, ¶ 13).  Gatling did not pay any amount in March or April 2011.  (*Id.*, ¶ 14).

On April 1, CitiMortgage sent Gatling a notice of default.  This letter, which does not appear to have been sent by certified mail, stated that the past-due amount was $1,554.25, which included $17.99 in late charges.  (Docket Entry No. 33, Ex. B, at 1).  The letter asked Gatling to make immediate payment, either by telephone or by mail, (*id.*), or to call a Collection Specialist "to discuss payment arrangements," (*id.*, at 2).  The letter did not state that CitiMortgage intended to accelerate.  Gatling admits receiving this letter.  (Docket Entry No. 28, ¶ 29).

On April 5, CitiMortgage sent Gatling a letter that included notice of default and intent to accelerate.  (Docket Entry No. 32, Ex. A.4, at 1).  This letter was sent by certified mail.  (Docket Entry No. 32, Ex. A, ¶ 6; Ex. A.4, at 1).[2]  This letter stated that Gatling was in default, identified the

---

[2] Gatling has objected to the admissibility of CitiMortgage's notice of default and intent to accelerate, (Docket Entry No. 32, Ex. A.4); CitiMortgage's payment history for Gatling's mortgage, (Ex. A.6); CitiMortgage's account notes from May 20, 2011 to July 20, 2011, (Ex. A.7); and the explanatory affidavit of a CitiMortgage operations analyst, (Ex. A).  Gatling makes numerous unsubstantiated arguments about untrustworthiness.  (Docket Entry No. 33, at 10–15).

$1,554.25 past-due amount, and set a one-month deadline—until May 5—for Gatling to cure the default by paying that amount.  The letter stated that Gatling's failure to cure by that time would result in acceleration of the debt.  (*Id.*).  Gatling appears to allege that she never received this letter. (*See* Docket Entry No. 28, ¶ 29; Docket Entry No. 33, at 15).

Gatling alleges that she logged into CitiMortgage's online system on April 8 to make the March 2011 payment.  Because she had not made her April 2011 payment, the system would only allow her to make a combined payment for March and April 2011.  (Docket Entry No. 28, ¶ 14). The defendants do not dispute these allegations.  Gatling did not make this payment.  (*Id.*).

Gatling received a form letter from CitiMortgage's Collections Department on April 12. This letter, which does not appear to have been sent by certified mail, noted "that your mortgage account has not been kept current" and stated that "[i]f this situation is not corrected soon, you could lose your home through acceleration of the mortgage and foreclosure."  (Docket Entry No. 33, Ex. E). The letter asked Gatling to contact CitiMortgage by phone or fax.  (*Id.*).  The letter did not state the amount owing or that CitiMortgage intended to accelerate by a specific date.

Gatling alleges that, on April 25, she again logged into CitiMortgage's online system.  She intended to make the combined March/April payment but "was denied the ability to make the combined payment because of the alleged default status[.]"  (Docket Entry No. 28, ¶ 14).  The defendants do not dispute these allegations.

Gatling received two letters from CitiMortgage, both dated May 3.  (*Id.*, ¶ 15).  The first letter enclosed the Modified Agreement that Gatling had previously signed and delivered to CitiMortgage.  An Assistant Vice President for CitiMortgage had signed the agreement on April 8,

---

The documents are competent summary-judgment evidence.  The objections are overruled.

2011.  (Docket Entry No. 32, Ex. A.3, at 6).  The second letter formally notified Gatling that she "ha[d] missed two consecutive payments on [her] modified loan under the government's Home Affordable Modification Program (HAMP)."  (Docket Entry No. 1, Ex. D(D)).  This second letter explained that if Gatling missed a third consecutive payment, she would lose her status of "good standing[.]"  (*Id.*).  The letter provided numbers for her to telephone for assistance.  (*Id.*).

CitiMortgage also sent Gatling a letter dated May 10.  This letter, which does not appear to have been sent by certified mail, informed Gatling that her mortgage remained in default and that "[a]ll reasonable efforts afforded you to cure this default have failed."  (Docket Entry No. 32, Ex. A.5).  The letter stated that her mortgage had been referred to a law firm to begin foreclosure proceedings.  (*Id.*).  Gatling alleges that, on May 16, she logged into CitiMortgage's online system to try to make payment, but "the entire online payment portion for the account had been disabled[.]"  (Docket Entry No. 28, ¶ 16).

Also on May 16, the law firm handling the foreclosure mailed Gatling notices of acceleration and of foreclosure sale.  These notices stated that the foreclosure sale would occur three weeks later, on June 7, 2011, and gave the time and place.  These notices were mailed in one letter, by both first-class and certified mail.  (Docket Entry No. 32, Ex. B.1; *see also* Docket Entry No. 32, Ex. B, ¶ 3).  Gatling alleges that she contacted CitiMortgage multiple times to dispute the foreclosure sale, without success.  (Docket Entry No. 28, ¶ 18).

CitiMortgage's Workout Department sent Gatling a letter on May 23.  The letter asked Gatling to call an account specialist to discuss whether she qualified for "alternative payment solutions[.]"  (Docket Entry No. 1, Ex. D(I)).  Gatling alleges that she immediately called the Workout Department and received a mortgage-reinstatement quote of $4,278.49.  (Docket Entry No.

7

28, ¶ 20).  A CitiMortgage operations analyst confirms this quote.  (Docket Entry No. 32, Ex. A, ¶ 13).  According to a June 29, 2011 email from Gatling to one of the foreclosure attorneys, the Workout Department advised her to contact the law firm handling the foreclosure.  Gatling alleges that she did so, but she did not receive a return phone call.  (Docket Entry No. 1, Ex. D(M), at 1–2).

This same email from Gatling to the foreclosure attorney also discussed another phone conversation with a CitiMortgage representative.  Gatling states in the email that she spoke with a representative named "Jordan."  According to Gatling, "[Jordan] went through everything with me on the phone and then said that I qualified for a repayment plan.  She took my financial information and submitted it for rush processing.  She told me to call back to check the status and make the 50% payment."  (*Id.*, at 2; *see also* Docket Entry No. 28, ¶ 21).  CitiMortgage's consolidated notes log for Gatling's mortgage account for the period from May 20 to July 20, 2011 does not show a conversation with anyone named Jordan.  No entry describes a conversation between a CitiMortgage representative and Gatling about a repayment plan.  The entries before the June 7 foreclosure sale focus on the $4,278.49 reinstatement quote.  (*See* Docket Entry No. 32, Ex. A.7).  Gatling did not pay CitiMortgage the reinstatement amount before the foreclosure sale.  Nor has she presented evidence of her ability or willingness to pay this amount at that time.

The foreclosure sale proceeded as scheduled on June 7.  Gatling's home was sold to Fannie Mae for $118,675.62.  (Docket Entry No. 32, Ex. A, ¶ 15; *see also* Docket Entry No. 32, Ex. A.7, at 2).  As of January 1, 2011, the home was valued at $114,525.  (Docket Entry No. 32, Ex. C.1, at 1).  On June 9, Fannie Mae posted a notice on the front door stating that it had bought the property and that Gatling had ten days either to rent the home or relocate (with Fannie Mae's financial assistance).  (Docket Entry No. 28, ¶ 22; *see also* Docket Entry No. 1, Ex. D(J)).  On June 17,

8

Gatling received a letter from the foreclosure attorneys representing Fannie Mae telling her to vacate the home within three days.  (Docket Entry No. 1, Ex. D(K)).

Gatling alleges that she called a CitiMortgage representative named "Melissa" to discuss the status of the purported repayment plan offered by "Jordan."  (Docket Entry No. 28, ¶ 21).  CitiMortgage's log shows that this conversation between Gatling and Melissa Lira took place at 9:39 a.m. on June 27.  (Docket Entry No. 32, Ex. A.7, at 2).  According to the log, Gatling said that she had been "working on payment plan" but her file went into foreclosure before the plan had been set up.  She had called Fannie Mae, which advised her to call CitiMortgage to have the foreclosure sale rescinded.  Lira told Gatling that there was no guarantee that the sale would be rescinded.  (*Id.*).

Gatling was served with eviction papers on July 7.  (Docket Entry No. 1, Ex. D(L)).  CitiMortgage's log shows that she called CitiMortgage at 1:53 p.m. to ask about rescission.  Gatling talked to Gerjuan Nelson, who advised her that the file reflected no updates.  Nelson reviewed the file and concluded that no rescission would occur.  There is no indication that Nelson gave this information to Gatling.  (Docket Entry No. 32, Ex. A.7, at 1).

On either July 18 or 20, CitiMortgage informed Gatling that her request to rescind the foreclosure sale had been denied.  (*Compare* Docket Entry No. 28, ¶ 25; *with* Docket Entry No. 32, Ex. A.7, at 1).  On July 27, Gatling filed this lawsuit against CitiMortgage and Fannie Mae, asserting numerous causes of action: wrongful foreclosure against both defendants; breach of contract against CitiMortgage; breach of fiduciary duty against Fannie Mae; fraudulent misrepresentation against both defendants; fraudulent concealment against Fannie Mae; and negligence against Fannie Mae.  Gatling's claims were largely based on her assertion that CitiMortgage violated HAMP in foreclosing.  The defendants timely removed to this court.  (Docket Entry No. 1).

In an opinion dated December 28, 2011, this court granted the defendants' motion to dismiss. (Docket Entry No. 25).  The court dismissed Gatling's cause of action under HAMP, noting courts' uniform refusal to recognize a private right of action under HAMP.  (*Id.*, at 11–15).  The court dismissed many of Gatling's claims—breach of fiduciary duty, fraudulent misrepresentation, fraudulent concealment, and negligence—as recast HAMP claims.  (*Id.*, at 15).  The court dismissed Gatling's wrongful-foreclosure claim, concluding that Gatling had failed to allege the second and third elements of such a claim.  To determine whether leave to amend should be granted, the court looked at the defects in the foreclosure process Gatling alleged: first, that she was not in default when CitiMortgage began foreclosure proceedings; and second, that she did not receive the required statutory notices.  (*Id.*, at 16).  The court rejected Gatling's first argument, which was based on her assertion that her default status was cured on May 3, 2011, when she received the signed Modified Agreement from CitiMortgage.  The court concluded that, although the Modified Agreement did not become effective until May 3—the date of Gatling's receipt of the signed agreement—it retroactively applied to January 1, 2011.  (*Id.*, at 16–19).  On the other hand, the court concluded that Gatling could amend her wrongful-foreclosure claim based on lack of notice; Gatling had sufficiently alleged that she did not receive the notices required under Texas law.  (*Id.*, at 20–21).  The court dismissed Gatling's breach-of-contract claim because it was based on her theory that she was not in default.  The court denied leave to amend this claim because to do so on the basis that she was not in default would be futile.  (*Id.*, at 22).  Finally, the court dismissed Gatling's remaining claims as insufficiently pleaded under Rule 8.  The court allowed Gatling to amend these claims, so long as they were not based on the theories that she was not in default or that the defendants' actions violated HAMP.  (*Id.*, at 22–23).

10

This opinion also granted the defendants' motion for additional security, (*id.*, at 23–24), but there is confusion about the amount.  To clarify, Gatling is only required to submit $400.00 each month.  (*See id.*, at 24).  Gatling has timely submitted her required payments.

Gatling timely submitted a second amended complaint.  (Docket Entry No. 28).  This complaint asserted causes of action for wrongful foreclosure and violations of the FDCPA, the TDCA, and the DTPA against CitiMortgage.  Gatling also asserted a DTPA claim against Fannie Mae based on its "failure to properly supervise MHA loan servicing in its contractual role of oversight for the MHA program[.]"  (*Id.*, ¶ 38).  The defendants have moved for summary judgment on each of these claims.  (Docket Entry No. 32).  The arguments are analyzed below.

## II.      The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d

316, 326 (5th Cir. 2009) (internal quotation marks omitted).  "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'"  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).

## III.   The DTPA Claim against Fannie Mae

Gatling's second amended complaint asserts one cause of action against Fannie Mae—that Fannie Mae violated the DTPA by failing "to properly supervise MHA loan servicing in its contractual role of oversight for the MHA program[.]" (Docket Entry No. 28, ¶ 38).  The summary-judgment evidence shows that CitiMortgage serviced Gatling's mortgage loan during the relevant period, including during the foreclosure process.  Gatling does not appear to dispute this.  The summary-judgment evidence clearly shows that Fannie Mae's involvement with respect to Gatling's

home began when Fannie Mae purchased the home at the foreclosure sale. Gatling's remaining claims relate to the process leading to the foreclosure on her home—specifically, whether she received the notices of default and intent to accelerate required under Texas law before receiving notices of acceleration and foreclosure sale and before her home was sold at the foreclosure sale. The only defendant with respect to these claims, given the uncontroverted summary-judgment evidence, is CitiMortgage.

Summary judgment is granted for Fannie Mae on Gatling's DTPA claim. All claims against Fannie Mae have been dismissed, with prejudice.[3]

## IV. The Claims against CitiMortgage

### A. Wrongful Foreclosure

CitiMortgage has moved for summary judgment on Gatling's wrongful-foreclosure claim. That claim is based on CitiMortgage's failure to provide proper notice of default and intent to accelerate under Texas law. Under Texas law, "the elements of a wrongful foreclosure claim are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

---

[3] In the summary-judgment motion and response, the parties argue the merits of Gatling's brief allusion in her second amended complaint to article 9 of the Texas Uniform Commercial Code. Although the second amended complaint mentions article 9, (Docket Entry No. 28, ¶ 40), the complaint alleges wrongful foreclosure and violations of the FDCPA, DTPA, and TDCA. In her response, Gatling clarifies that she is not asserting a separate claim under article 9. She "asserted this violation to demonstrate that the Defendants had not acted in good faith and fair dealing, which is a necessary component to evaluating the inadequacy of the sales price"—an element of her wrongful-foreclosure claim. (Docket Entry No. 33, at 18).

CitiMortgage argues that, even if the court found a defect in the foreclosure process, summary judgment on the wrongful-foreclosure claim is warranted because there is no evidence of a grossly inadequate sales price.  To the contrary, according to CitiMortgage, the evidence is that Gatling's home was sold for more than its value.  (Docket Entry No. 32, at 12).  Gatling responds that her home "necessarily" sold for a grossly inadequate price when it was sold after "premature acceleration and foreclosure[.]"  (Docket Entry No. 33, at 16).

Under Texas mortgage-foreclosure law, "[a] claim for 'wrongful foreclosure is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers*, 767 F. Supp. 2d at 729; *accord, e.g.*, *Castanon v. Wells Fargo Bank, N.A.*, No. 3:11-CV-03472-P, 2012 WL 3200869, at *2 (N.D. Tex. June 22, 2012); *Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11-CV-388-A, 2012 WL 1870923, at *8 (N.D. Tex. May 23, 2012) (citing *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1976)); *Hurd v. BAC Home Loans Servicing, LP*, — F. Supp. 2d —, 2012 WL 1106932, at *15 (N.D. Tex. 2012).  "[A] grossly inadequate price would have to be so little as 'to shock a correct mind, and thereby raise a presumption that fraud attended the purchase.'" *F.D.I.C. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (quoting *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ)).  "[I]n Texas, cases finding gross inadequacy typically involve a selling price below sixty percent of the property's value[.]" *Richardson v. Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2012 WL 2511169, at *9 (N.D. Tex. 2012) (interpreting *Blanton*, 918 F.2d at 531–32).

CitiMortgage has presented competent summary-judgment evidence—and Gatling has presented no controverting evidence[4]—that the property sold at foreclosure for *more* than its appraised value.  (*See* Docket Entry No. 32, Ex. A, ¶ 16; Docket Entry No. 32, Ex. C.1, at 1).  Even if there is a fact issue as to a defect in notice (which will be discussed below as to the TDCA claims), Gatling cannot prove the required element of a grossly inadequate sales price. CitiMortgage is entitled to summary judgment on Gatling's wrongful-foreclosure claim.  *See Moye v. Fed. Home Loan Mortg. Corp.*, Civ. A. No. H-12-0502, 2012 WL 3048858, at *4 (S.D. Tex. July 25, 2012) (dismissing wrongful-foreclosure claim where the record demonstrated "that the property was sold for a price higher than the appraised value"); *Castanon*, 2012 WL 3200869, at *2 (same).

### B.   FDCPA

CitiMortgage has moved for summary judgment on Gatling's FDCPA claim, arguing that it is not a "debt collector" under that Act.  Gatling disagrees, relying on a 1989 staff-opinion letter from the Federal Trade Commission and CitiMortgage's alleged self-identification as a "debt collector."  (Docket Entry No. 33, at 16 & n.4).  The law is clear, however, that "mortgage lenders are not 'debt collectors' within the meaning of the FDCPA."  *Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428 n.1 (5th Cir. 2012) (per curiam) (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008) (per curiam)); *accord Nwoke v. Countrywide Home Loans, Inc.*, 251 F. App'x 363, 364–65 (7th Cir.

---

[4] Gatling relies on the allegations in her complaint to show that a genuine issue of material fact exists as to this element of her wrongful-foreclosure claim.  (Docket Entry No. 33, at 16 (citing Docket Entry No. 28, ¶¶ 33, 40)).  On summary judgment, however, the nonmovant must "go beyond the pleadings" and present evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Even had these allegations been presented in an affidavit, they would still not be sufficient to defeat summary judgment.  *See, e.g.*, *Gonzales v. AutoZoners, LLC*, — F. Supp. 2d —, 2012 WL 912719, at *3 (S.D. Tex. 2012) ("A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary." (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)).

2007) (per curiam); *JP Morgan Chase Bank, N.A. v. Horvath*, — F. Supp. 2d —, 2012 WL 995397, at *8 (S.D. Ohio 2012). CitiMortgage is entitled to summary judgment on Gatling's FDCPA claim.

###    C.    TDCA

Gatling's TDCA claims relate to CitiMortgage's alleged failure to provide the notices required for foreclosure under the Texas Property Code. (Docket Entry No. 28, ¶ 39). CitiMortgage has moved for summary judgment on these claims. CitiMortgage repeats its FDCPA argument that, under the TDCA, it is not a "debt collector." The TDCA, however, "is much broader than the FDCPA," and "the TDCA's definition of 'debt collectors' is also intended to encompass creditors collecting their own debts." *Marquez v. Fed. Nat'l Mortg. Ass'n*, Civ. A. No. 3:10-CV-02040-L, 2011 WL 3714623, at *4 (N.D. Tex. Aug. 23, 2011); *accord Fraley v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1060-N-BK, 2012 WL 779130, at *5 (N.D. Tex. Jan. 10, 2012), *adopted by* 2012 WL 779654 (N.D. Tex. Mar. 9, 2012). "Unlike the FDCPA, the [TDCA] encompasses foreclosure activities by mortgage holders." *Akintunji v. Chase Home Fin., L.L.C.*, Civ. A. No. H-11-389, 2011 WL 2470709, at *3 (S.D. Tex. June 20, 2011) (citing *Biggers*, 767 F. Supp. 2d at 731–32). CitiMortgage is not a "debt collector" under the FDCPA, but it is under the TDCA.

Gatling has asserted claims under §§ 392.301(a)(8) and 392.304(a)(8) of the TDCA. (Docket Entry No. 28, ¶ 36). These claims both rest on CitiMortgage's sending notices of acceleration and foreclosure sale, and holding the foreclosure sale, without first sending the proper notices of default and intent to accelerate and allowing Gatling the 21-day opportunity to cure.

Section 392.301(a)(8) prohibits a debt collector from "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). "A violation of § 392.301(a)(8) occurs only when a debt collector takes or threatens to take an action prohibited by law." *Richardson*, 2012 WL

2511169, at *11. The Texas Property Code required CitiMortgage to first send proper notices of default and intent to accelerate, and provide Gatling with 21 days to cure the default, before sending notices of acceleration and foreclosure sale and before holding the foreclosure sale. For the below reasons, there is a disputed fact issue as to whether CitiMortgage complied with this requirement.

"To effect a valid foreclosure, the holder of a defaulted note must give notice of intent to accelerate with demand for payment and time to cure, notice of acceleration and notice of foreclosure sale at least 21 days before the sale and notice of default at least twenty days before notice of sale." *Clark v. F.D.I.C.*, — F.Supp. 2d —, 2011 WL 2709062, at *4 (S.D. Tex. 2011) (citing TEX. PROP. CODE § 51.002(b) and *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982)). Notice to the debtor is satisfied so long as the notice is deposited for delivery to the debtor's last known address by certified mail. TEX. PROP. CODE § 51.002(e); *Hill v. Fremont Inv. & Loan*, No. 05-02-01438-CV, 2004 WL 1178607, at *3 (Tex. App.—Dallas May 28, 2004, no pet.) (citing, e.g., *Onwuteaka v. Cohen*, 848 S.W.2d 889, 882 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

In this case, Gatling does not dispute that she received the notices of acceleration and foreclosure sale required under the Texas Property Code. Instead, Gatling disputes that she received the notices of default and intent to accelerate, required before the notices of acceleration and foreclosure sale. Gatling relies on her allegations in paragraph 31 of her second amended complaint that she never received CitiMortgage's formal notice of default and that CitiMortgage never served such notice. (Docket Entry No. 33, at 15).

The Texas Property Code provides:

> Service of a notice under this section by certified mail is complete
> when the notice is deposited in the United States mail, postage

17

> prepaid and addressed to the debtor and the debtor's last known
> address.  The affidavit of a person knowledgeable of the facts to the
> effect that service was completed is prima facie evidence of service.

Tex. Prop. Code § 51.002(e).  CitiMortgage has submitted a copy of the original notice of default and intent to accelerate, with the certified-mail tracking code.  (Docket Entry No. 32, Ex. A.4).  CitiMortgage has also presented the affidavit of an operations analyst stating that this notice of default and intent to accelerate "was deposited in the United States mail and sent by Certified Mail Return Receipt Requested, postage paid, and addressed to the Property address, the Plaintiff's last known address[.]"  (Docket Entry No. 32, Ex. A, ¶ 6).  Gatling has presented no controverting evidence.  She relies on her allegation in the second amended complaint that she never received the letter and that CitiMortgage never served it.

Based on this record, CitiMortgage is entitled to summary judgment on the wrongful-foreclosure claim that is based on Gatling's unsupported allegation that CitiMortgage never served the notice of default.  *See, e.g.*, *Richardson*, 2012 WL 2511169, at *7 (so holding when the bank presented evidence that it mailed the notice by certified mail to the plaintiff's last known address, and the plaintiff countered only with her own allegation that she did not receive it); *Clark*, 2011 WL 2709062, at *9 (same).

Gatling next argues that her May 3 receipt of the signed Modified Agreement from CitiMortgage required CitiMortgage to send new notices of default and intent to accelerate in order to foreclose under the Texas Property Code.[5]  This notice issue is more difficult.  CitiMortgage

---

[5] The court's previous opinion noted the issue related to allegedly defective notice created by the timing of the Modified Agreement:

> The allegation that Gatling did not receive the signed Modified Agreement from
> CitiMortgage until May 3, 2011 raises another issue.  Gatling admits that she did
> not make mortgage payments in March and April 2011.  (*See* Docket Entry No. 12,

generally argues that Gatling's receipt of the Modified Agreement on May 3 is irrelevant because she was at all times in default under the Deed of Trust. CitiMortgage argues that the Deed of Trust is the operative document under which it was required to send the notices for a nonjudicial foreclosure. (*See* Docket Entry No. 32, at 8).

The Deed of Trust requires Gatling to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Docket Entry No. 32, Ex. A.1, § 1). The Original Note, then the Modified Agreement, set the amounts that Gatling must pay under the Deed of Trust. (Docket Entry No. 32, Exs. A.2, ¶¶ 1, 3; A.3, ¶ 3). The Deed of Trust states that CitiMortgage must "give notice to Borrower [Gatling] prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." (Docket Entry No. 32, Ex. A.1, § 22). Under the Deed of Trust, CitiMortgage had to provide notice in compliance with the Texas Property Code[6] if Gatling was in breach of her obligation to pay the amounts owed under the Note.

On April 5, 2011, CitiMortgage sent Gatling, by certified mail, the notices of default and intent to accelerate. (Docket Entry No. 32, Ex. A.4). Gatling had not received the signed Modified

---

¶ 13). Her failure to do so placed her in default of the original note as well as the Modified Agreement. Because the Modified Agreement could not be retroactively applied until Gatling received it on May 3, CitiMortgage's April 15 notices of default and intent to accelerate appear to have been based on default of the original note. But by May 16, the date of the notices of acceleration and foreclosure sale, the Modified Agreement had become effective. Although Gatling was in default of the Modified Agreement as soon as she received CitiMortgage's signed copy on May 3, it is unclear whether CitiMortgage was obligated to provide new notices of default and intent to accelerate under the Modified Agreement before it could send out the notices of acceleration and foreclosure sale under that Agreement.

(Docket Entry No. 25, at 21).

[6] (*See* Docket Entry No. 32, Ex. A.1, § 15 ("If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.")).

Agreement from CitiMortgage.  Her receipt is a condition for its effectiveness.  (*See* Docket Entry

No. 32, Ex. A.3, ¶ 2(C)).  On April 5, Gatling was in breach of her obligation under the Original

Note, incorporated into the Deed of Trust, to pay the monthly principal and interest in the amount

set by the Original Note.  The April 5 notices of default and intent to accelerate could not be based

on Gatling's breach of her obligation to pay the monthly principal and interest in the amount later

set by the Modified Agreement.

On May 3, Gatling received the Modified Agreement.  The Deed of Trust's references to the

"Note" now referred to the Original Note as modified by the Modified Agreement.  On May 3,

Gatling had not received notice that she was in breach of her obligations under the Modified

Agreement.  Instead, she had been sent notice that she was in breach of the Original Note.  But the

Modified Agreement was in effect when CitiMortgage foreclosed on Gatling's property.

CitiMortgage foreclosed after Gatling had received the signed Modified Agreement, which was then

incorporated into the Deed of Trust.  Gatling was in breach of her obligation to pay the amounts due

under the Modified Agreement.  Gatling was entitled to new notices of default and intent to

accelerate under the Deed of Trust, as modified by the Modified Agreement, once the Modified

Agreement applied.  The Modified Agreement's retroactivity provision[7] did not relieve CitiMortgage

of its statutory obligation to give notices of default and intent to accelerate under the operative note

incorporated into the Deed of Trust.

The Texas Property Code sets specific notice requirements for a nonjudicial foreclosure.

Strict compliance is required.  *See Hill v. Wells Fargo Bank, N.A.*, Civ. A. No. V-12-11, 2012 WL

2065377, at *7 (S.D. Tex. June 6, 2012); *McIntosh v. U.S. Bank Nat'l Ass'n*, Civ. A. No. H-11-3874,

---

[7] (*See* Docket Entry No. 25, at 16–19).

2012 WL 75141, at *2 (S.D. Tex. Jan. 10, 2012) (citing *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)); *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011); *G4 Trust v. Consolidated Gasoline, Inc.*, No. 02-10-00404-CV, 2011 WL 3835656, at *3 (Tex. App.—Fort Worth Aug. 31, 2011, pet. denied) (citing cases); *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 609 (Tex. App.—Corpus Christi 2005, pet. denied). The Texas Supreme Court has stated that one of the main purposes of "[t]he statutory notice provisions of section 51.002" is to "protect the debtor by affording him a lengthy notice period in which he may cure[.]" *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (1987). Gatling was not provided with an opportunity to cure the breach of her obligation, incorporated into the Deed of Trust, to pay the monthly amount of principal and interest owed under the Modified Agreement.

The Texas Supreme Court has recently reaffirmed "that minor defects in an otherwise valid foreclosure sale do not void it." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 628 (2011) (per curiam). The notice defect in this case, however, is not the type of minor noncompliance that the cases overlook. Such minor defects include the deed of trust's omission of a partnership designation, *id.*; the notice of default stating the incorrect amount of principal and interest, *Powell v. Stacy*, 117 S.W.3d 70, 75 (Tex. App.—Fort Worth 2003, no pet.); or the notice of foreclosure sale failing to state a specific time on the date that the sale was to occur, *Sanders v. Shelton*, 970 S.W.2d 721, 726 (Tex. App.—Austin 1998, pet denied.). The defect in this case is that the debtor was statutorily entitled to new notices of default and intent to accelerate.

It is undisputed that Gatling knew that she was in default, whether the operative note was the Original Note or the Modified Agreement. But that does not affect whether CitiMortgage was

required to provide notices of default and intent to accelerate under the Deed of Trust for breach of the Modified Agreement.  A disputed issue exists as to whether CitiMortgage, in sending the notices of acceleration and foreclosure sale and in holding the foreclosure sale, took "an action prohibited by law."  *See Biggers*, 767 F. Supp. 2d at 733 ("If BAC and its purported substitute trustees threatened to foreclose at a time when BAC did not have the legal right to demand foreclosure, it would have threatened to do an action prohibited by law.").

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding[.]"  TEX. FIN. CODE § 392.304(a)(8).  "A collection notice or balance statement misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCA."  *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632–33 (N.D. Tex. 2010) (citing cases).  As Gatling points out, (Docket Entry No. 33, at 16–17), the Deed of Trust only authorizes CitiMortgage to "collect all expenses incurred in pursuing the remedies provided in this Section 22 [accelerating the debt], including, but not limited to, reasonable attorneys' fees and costs of title evidence."  (Docket Entry No. 32, Ex. A.1, § 22).  The May 16 notices of acceleration and foreclosure sale listed the payoff amount, due by May 20 to avoid foreclosure, as $149,467.10.  (Docket Entry No. 32, Ex. B.1, ¶ 5).  The record does not show whether this payoff amount includes attorneys' fees and costs incurred to send the notices of acceleration and foreclosure sale (and notices of default and intent to accelerate under the Original Note).  CitiMortgage may have misrepresented the amount of Gatling's debt.  Because a disputed issue of material fact exists as to this question, summary judgment on Gatling's TDCA claim under § 392.304(a)(8) is inappropriate.

CitiMortgage is not entitled to summary judgment on Gatling's TDCA claims.  *See also Rey v. Acosta*, 860 S.W.2d 654, 659 (Tex. App.—El Paso 1993, no pet.).

**D.      DTPA**

Gatling's DTPA claim relates to CitiMortgage's alleged failure to provide the notices required under the Texas Property Code.  (Docket Entry No. 28, ¶ 39).  There are three elements to a DTPA claim: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).

There are two requirements for consumer status under the DTPA.  "First, the person must seek or acquire goods or services by lease or purchase."  *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied) (citing TEX. BUS. & COM. CODE § 17.45(4)).  "Second, the goods or services sought or acquired must form the basis of the party's complaint."  *Id.* (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987)); *accord, e.g.*, *Owens v. BAC Home Loans Servicing, L.P.*, Civ. A. No. H-11-2742, 2012 WL 1494231, at *4 (S.D. Tex. Apr. 27, 2012).  "Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service."  *Fix*, 242 S.W.3d at 160 (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980)); *accord, e.g.*, *Owens*, 2012 WL 1494231, at *4.  Notwithstanding the general rule that  "a loan is not in itself a good or service, a lender may be subject to a DTPA claim if the borrower's objective is the purchase of a good or service."  *Marquez*, 2011 WL 3714623, at *5 (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984)); *accord Woods v. Bank of Am., N.A.*, Civ. A. No.

3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012) (quoting *Marquez*); *La Sara Grain Co.*, 673 S.W.2d at 567 ("[A] lender may be subject to a DTPA claim if the borrower's 'objective' is the purchase or lease of a good or service thereby qualifying the borrower as a consumer."). "The determining factor is whether the purchase or lease of a good or service was 'an objective of the transaction, not merely incidental to it.'" *Marquez*, 2011 WL 3714623, at *5 (quoting *F.D.I.C. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986)). At the same time, however, "[t]he DTPA does not apply to wholly intangible property rights." *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 125 (5th Cir. 1993) (citing *Tex. Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 876 (Tex. Civ. App.—Corpus Christi 1988, writ denied)).

Like the homeowner in *Marquez*, "[Gatling] obtained a loan to purchase the Property, and it is clear from the record that [Gatling]'s objective was the purchase of this residence." *Marquez*, 2011 WL 3714623, at *6. Her DTPA claim, however, is not premised on CitiMortgage's allegedly deceptive acts "related to financing the purchase of [her] house, but rather, [she] complains the Bank wrongfully foreclosed on [her] property." *Brown v. Bank of Galveston, N.A.*, 930 S.W.2d 140, 144 (Tex. App.—Houston [14th Dist.] 1996), *aff'd on other grounds*, 963 S.W.2d 511 (Tex. 1998). Her claim is based on acts occurring years after the financing transaction with CitiMortgage had been completed. How Gatling's mortgage loan was administered—and the problems subsequently attending that administration—"is merely incidental to [her] *prior* objective to purchase a residence[.]" *Woods*, 2012 WL 1344343, at *7 (emphasis added). Gatling's DTPA claim attempts to vindicate a "wholly intangible property right": the homeowner's right to receive all notices required by the Texas Property Code prior to foreclosure. *Meineke Discount Muffler*, 999 F.2d at

125.  The DTPA does not apply to such a claim.  Because Gatling is not a "consumer" for purposes of the DTPA,[8] CitiMortgage is entitled to summary judgment on her DTPA claim.

### E.    Exemplary Damages and Attorney's Fees

CitiMortgage finally seeks summary judgment on the issues of whether, assuming she successfully establishes CitiMortgage's liability at trial, Gatling is entitled to exemplary damages and attorney's fees under Texas law.  (Docket Entry No. 32, at 19).  CitiMortgage is entitled to summary judgment on both issues.  As to attorney's fees, the Texas Supreme Court has recognized that the "case law is 'fairly uniform' that a pro se litigant is not entitled to attorneys' fees[.]" *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 299 (Tex. 2011); *see also De Mino v. Achenbaum*, 136 F. App'x 695, 696 (5th Cir. 2005) (per curiam) (holding that a pro se plaintiff is not entitled to attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.002(1)).  To the extent that Gatling seeks fees for work representing herself, Texas law does not permit such an award.

A plaintiff is not entitled to exemplary damages under Texas law absent a showing of "fraud, malice (specific intent to cause substantial harm), or gross negligence[.]"  *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 661 n.3 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 41.003). "[E]vidence of simple negligence is not evidence of gross negligence," and thus cannot support an exemplary-damages award.  *Exxon Mobil Corp. v. Altimore*, 256 S.W.3d 415, 425 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Gatling has presented no evidence creating a disputed

---

[8] Gatling argues, in determining whether she is a consumer under the DTPA, this court must take into account how "certain actions [by CitiMortgage] are considered to be 'inextricably intertwined.'" (Docket Entry No. 33, at 17). She cites *Brown v. Bank of Galveston, N.A.*, 930 S.W.2d 140 (Tex. App.—Houston [14th Dist.] 1996), *aff'd on other grounds*, 963 S.W.2d 511 (Tex. 1998); and *Home Savings Association v. Guerra*, 733 S.W.2d 134 (Tex. 1987).  The discussion of "inextricably intertwined" in those cases is not relevant.  That doctrine concerns whether two parties—the seller of goods or services and the creditor, not the buyer or debtor—"were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." *Guerra*, 733 S.W.2d at 136 (quoting *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982)) (emphasis omitted).  In this case, the "inextricably intertwined" doctrine plays no role because it is undisputed that CitiMortgage was both the "seller" of the mortgage loan and the creditor.

25

factual issue that CitiMortgage's failure to provide new notices of default and intent to accelerate after mailing the signed Modified Agreement to Gatling was the product of fraud, malice, or gross negligence.  Because the disputed fact issues are limited to whether, as a result of negligence, CitiMortgage failed to give the proper notices, Gatling's damages are limited to actual damages.[9]

## V.    Breach of Contract

The court's previous opinion dismissed Gatling's breach-of-contract claim, with prejudice and without leave to amend.  (Docket Entry No. 25, at 22).  But Gatling's amended pleadings and the parties' motions and briefs demonstrate that she has a colorable claim for breaches of §§ 15 and 22 of the Deed of Trust, which require that all statutory notices be given before accelerating the debt and holding the foreclosure sale.  (*See* Docket Entry No. 32, Ex. A.1, §§ 15, 22).

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[T]he language of this rule evinces a bias in favor of granting leave to amend."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks omitted).  This bias is even stronger in cases involving pro se plaintiffs.  *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995) ("The court should freely give a complainant, especially a pro se complainant, leave to amend defective allegations in a pleading."); *cf. also In re Sealed Case (Bowles)*, 624 F.3d 482, 484 (D.C. Cir. 2010) ("The purpose of the civil rules set forth in Rule 1 contemplates a just as well as speedy resolution of disputes." (citing FED. R. CIV. P. 1)).  Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]"

---

[9] For the same reasons, Gatling would not be entitled to mental-anguish damages under the DTPA even if she had a colorable claim under that act.  *See Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993) (holding that "mental anguish damages may not be recovered under the Texas Deceptive Trade Practices Act absent proof of a willful or grossly negligent violation" (internal citation omitted)).

*Jones*, 427 F.3d at 994 (internal quotation marks omitted).  Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment."  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

Allowing Gatling to amend her complaint to assert a breach-of-contract claim against CitiMortgage based solely on alleged breaches of §§ 15 and 22 of the Deed of Trust (for not providing notices of default and intent to accelerate) is appropriate.[10]  CitiMortgage will not be unduly prejudiced—the most important factor under Rule 15[11]—by allowing the amendment. Allowing the addition of this claim will require no new discovery because it is not based on new facts.  The court will allow CitiMortgage, if appropriate, to move for summary judgment on this claim, so long as its motion is not based on the theory that it was not required to provide new notices of default and intent to accelerate under the Deed of Trust, as modified by the Modified Agreement. This motion must be filed by **October 19, 2012**.

Gatling therefore may amend her complaint one final time to assert two causes of action against CitiMortgage alone.  Those causes of action are: under the TDCA based on CitiMortgage's failure to provide proper notice as required under Texas law (as alleged in the second amended complaint); and for breach of contract based on CitiMortgage's failure to provide notice as required

---

[10] "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks and alteration omitted).

[11] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam); 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed. 2010).

under §§ 15 and 22 of the deed of trust.  The amended complaint must be filed by **September 17, 2012**.

## VI.    Conclusion and Order

For these reasons, summary judgment is:

1.      granted to dismiss Gatling's cause of action against Fannie Mae under the DTPA;

2.      granted to dismiss Gatling's causes of action against CitiMortgage for wrongful foreclosure and for violations of the FDCPA and the DTPA;

3.      denied on Gatling's causes of action against CitiMortgage under the TDCA; and

4.      granted to dismiss Gatling's claims for exemplary damages and attorney's fees for Gatling's work as a pro se litigant.

Fannie Mae is dismissed from this lawsuit, with prejudice.

By **September 17, 2012**, Gatling will file a third amended complaint—against CitiMortgage alone—asserting: (1) causes of action under the TDCA based on CitiMortgage's alleged failure to provide notices of default and intent to accelerate, as required under Texas law (as alleged in the second amended complaint); and (2) a cause of action for breach of contract based on CitiMortgage's failure to provide proper notice as required under the Deed of Trust.  By **October 19, 2012**, CitiMortgage may move for summary judgment on the breach-of-contract claim, so long as its motion is not based on the theory that it was not required to provide new notices of default and intent to accelerate under the Deed of Trust, as modified by the Modified Agreement.  If CitiMortgage does not file a motion by that date, the court will set the case for docket call and trial.

Gatling will continue to deposit an additional $400.00 by the first day of each month during the pendency of this lawsuit.

SIGNED on August 28, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

29