UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | § | |
|---|---|---|---|
| Olive F. Gatling | | § | |
| | *Plaintiff,* | § | |
| | | § | |
| v. | | § | Case No.: 4:11-cv-02879 |
| | | § | Judge Milloy, Magistrate |
| CitiMortgage Inc. | | § | |
| | *Defendant.* | § | |
| TYPE OF CASE: | Civil | § | |
| | | § | |

**PLAINTIFF'S OBJECTION TO NON-PARTY FANNIE MAE'S MOTION FOR RELEASE OF COURT REGISTRY FUNDS**

TO THE HONORABLE JUDGE MILLOY:

Now comes Plaintiff, Olive F. Gatling ("Gatling"), to specifically object to and oppose Non-Party Federal National Mortgage Association's ("Fannie Mae") Unopposed Motion for Release of Court Registry Funds.[1] For the following reasons, Fannie Mae's motion should be denied for violation of Federal Rules of Civil Procedure, lack of standing, untimeliness, and undue prejudice to the Plaintiff.

## INTRODUCTION

This civil action between Gatling and CitiMortgage, Inc. was dismissed without prejudice by Order of the Court on January 6, 2014, following a settlement agreement between the two parties. Additionally, the Court dismissed Fannie Mae as a defendant in the civil action in its Memorandum and Order (*See* Dkt. No. 41). Now comes Fannie Mae, as a nonparty, to assert a claim to the court registry funds deposited by Gatling during the pendency of the litigation. The Court's Order of Dismissal clearly established only the rights of the parties to make post-trial

---

[1] Although Fannie Mae asserts that this is an "unopposed" motion and claims a certificate of conference, Gatling never conferenced with Fannie Mae about an unopposed motion on January 3, 2014. Gatling was in confidential settlement talks with CitiMortgage on January 3, 2014. If Fannie Mae is stating that CitiMortgage was acting with Fannie Mae's authority, then this can be treated as an unopposed motion and the Court can disregard Plaintiff's Objection.

motions. There are procedures for securing the rights and interests of any party to the outcome of a lawsuit. Fannie Mae cannot move this Court absent those procedural requirements.

## ARGUMENT

### 1. Motion to Intervene as Condition Precedent

A nonparty must establish its basis for intervening in a suit to which it is not a party. By definition, a nonparty is a party that has not been joined to the action. Unless joined by motion or by order of the court, the rights and interests of that party are not represented or protected. FED. R. CIV. P. 19(A)(1)(B). If a nonparty wishes to protect its interests, the correct mechanism is through Federal Rule of Civil Procedure 24 – Intervention. Intervention is the appropriate mechanism for nonparties to protect interests that may adversely be affected by a trial court's judgment. FED. R. CIV. P. 24. (See also *In re* Discovery Zone Securities Litig., 181 F.R.D. 582 (ED Ill 1998); Feltzen v. Andreas, 134 F.3d 873, 874 (7th Cir. 1998), cert. granted in part, 141 L. Ed. 2d 789, 119 S. Ct. 29 (1998)). As a government entity, Fannie Mae would obviously have to establish the proper basis for intervention under either FRCP 24(a) or 24(b), but the proper method of intervention is critical prior to asserting any claims. The Court should not consider a motion for release of court registry funds without having first considered a motion to intervene.

### 2. Standing Must Be Established

Fannie Mae argues standing based on the Court's Order granting the Defendant's motion for additional security. However, the Court granted that motion based on the mortgage loan between CitiMortgage and Gatling, stating, "Gatling cannot dispute that, since making her last payment in February 2011, she has lived in her property without making any payments to CitiMortgage. The fact that she has lived in her home for almost a year without any payment deprives CitiMortgage of adequate security."[2] Fannie Mae was subsequently dismissed with prejudice from the litigation in regards to Gatling's claims, by the Court's Memorandum and Order entered on August 28, 2012.[3] The Court interpreted the basis of the lawsuit to surround the events leading up to the foreclosure, of which Fannie Mae was not a party.[4] Fannie Mae's rights

---

[2] *See* Memorandum and Order granting Motion for Additional Security, denying Motion to Strike Reply in Support of Motion, granting Motion for Leave to File Sur-reply in Opposition to Reply, granting Motion to Dismiss Plaintiff's Amended Complaint at Dkt. No. 25.
[3] *See* Memorandum and Order granting in part and denying in part Opposed Motion for Summary Judgment, denying Motion to Strike Reply in Support of Motion, granting Motion for Leave to File Sur-Reply at Dkt. No. 41.
[4] *Id* at pp. 12-13 stating, "The summary-judgment evidence clearly shows that Fannie Mae's involvement with respect to Gatling's home began when Fannie Mae purchased the home at the foreclosure sale. Gatling's remaining

to the court registry funds were never established, since the basis of the lawsuit surrounded the mortgage agreement itself. This is further evidenced by the fact that the Court ordered Gatling to continue making deposits into the court registry after Fannie Mae's dismissal.

Monies deposited into the court registry are the property of the owner of the fund. There is no immediate right of others to that fund, but such rights can accrue once claims are recognized. Fannie Mae never accrued a right to the court registry funds, having never argued a claim that would attach the court registry funds. The motion for additional security is set in place to create a security interest, but that interest must be perfected through a claim. All claims by the parties were dismissed by Order of the Court with each party to bear its own costs. All pending claims were also denied with prejudice. Gatling's funds in the court registry are her "court costs,"[5] which are to be returned to her as her rightful property. Fannie Mae's failure to establish its claim cannot be remedied by the current motion.

### 3. Timeliness is a Significant Consideration

Timeliness is a significant factor in evaluating the rights of a nonparty. The test for timeliness is "essentially one of reasonableness: potential interveners need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning, they need to act reasonably promptly." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995). Fannie Mae has been aware of the lawsuit since its inception, and aware of its progress, given the fact that LockeLord LLP represents both CitiMortgage and Fannie Mae. If Fannie Mae believed that its interests were not protected, then it should have joined itself to the litigation with respect to the court registry funds. At any given time, Fannie Mae could have moved to timely assert its rights. The suit is already adjudicated with final settlement between the parties. Failure to timely assert a right or interest has, in some circuits, prevented a nonparty from appeal without having first intervened in the district court proceedings, no matter how crucial their interests. (*See Id.*; In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 457 (7th Cir. 1997)).

### 4. Potential for Prejudice to Plaintiff

An essential part of any claim asserted by Fannie Mae will be establishing that the existing parties do not adequately represent its interests. FED. R. CIV. P. 24. For Gatling, this presents a particularly troubling aspect of prejudice in the adjudication of the original parties'

---

claims relate to the process leading to the foreclosure on her home... The only defendant with respect to these claims, given the uncontroverted summary-judgment evidence, is CitiMortgage."
[5] *See* Plaintiff's Amended Initial Disclosures at Dkt. No. 56.

rights, which have already been settled. Fannie Mae needs to clearly establish for this Court and for Gatling's benefit, whether its interests have been represented by CitiMortgage, Inc., with authority to act on its behalf, or not. While there are public documents that shed light on whether CitiMortgage, Inc. has the "ability" to act on Fannie Mae's behalf, even if in its own name, in legal proceedings, the documentation is not evidence that Fannie Mae granted such authority in this legal proceeding.[6] Fannie Mae's action in filing this motion also creates confusion surrounding CitiMortgage's representation of its interests. To allow Fannie Mae to assert a claim as a nonparty would unduly jeopardize Gatling to further liability and cause irreparable harm.

## PRAYER

Plaintiff respectfully prays to God and to the Court that it denies Nonparty Fannie Mae's Motion for Release of Court Registry Funds for violation of Federal Rules of Civil Procedure, lack of standing, untimeliness, and undue prejudice to the Plaintiff. Plaintiff also requests that the Court enter any and all such other relief to which Plaintiff may be entitled.

Dated this 17th day of January, 2014.

Respectfully submitted,

Olive F. Gatling, Plaintiff
9427 Tooley Drive
Houston, TX 77031
ogatling@hotmail.com
Telephone: 713-778-0097

PRO SE

CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2014, a true and correct copy of the foregoing pleading or document has been served to Fannie Mae and CitiMortgage, Inc., via electronic notification, certified mail return receipt requested, facsimile, and/or hand delivery to the attorney(s) of record listed below:

---

[6] *See* Fannie Mae Announcement 08-12, Note Holder Status for Legal Proceedings Conducted in the Servicer's Name, submitted as Plaintiff's Exhibit A.

John B. Hall
Locke Lord Bissell and Liddell, LLP
600 Travis Street, Suite 2800
Houston, TX 77002-3095
713-226-1426 - telephone
713-229-2506 - facsimile

Kurt Lance Krolikowski
Locke Lord Bissell & Liddell, LLP
600 Travis Street, Suite 2800
713-226-1595 - telephone
713-229-2676 - facsimile

Robert T. Mowrey
Locke Lord Bissell & Liddell, LLP
200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776
214-740-8000 - telephone
214-740-8880 - facsimile

Olive F. Gatling, Plaintiff
9427 Tooley Drive
Houston, TX 77031
ogatling@hotmail.com
Telephone: 713-778-0097

PRO SE

# EXHIBIT A



*Announcement 08-12*                                              *May 23, 2008*

*Amends these Guides: Servicing*

*Note Holder Status for Legal Proceedings Conducted in the Servicer's Name*

# Introduction

Currently, the Fannie Mae *Servicing Guide* grants servicers, acting in their own names, the authority to represent Fannie Mae's interests in foreclosure proceedings as holder of the mortgage note. With this Announcement, Fannie Mae is clarifying that the ability of the servicer to represent Fannie Mae's interests as holder of the mortgage note also applies to bankruptcy, probate, and other legal proceedings. In order to more fully describe Fannie Mae's policies with regard to the servicer's note holder status, a new section of the Servicing Guide has been created and is outlined below.

# New *Servicing Guide* Section

*Servicing Guide*, **Part I, Chapter 2, Section 202.06, Note Holder Status for Legal Proceedings Conducted in the Servicer's Name**

Fannie Mae is at all times the owner of the mortgage note, whether the note is in Fannie Mae's portfolio or whether owned as trustee, for example, as trustee for an MBS trust. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below. Fannie Mae may have direct possession of the note or a custodian may have custody of the note. If Fannie Mae possesses the note through a document custodian, the document custodian has custody of the note for Fannie Mae's exclusive use and benefit.

**Temporary Possession by the Servicer**
In order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents Fannie Mae's interests in

- foreclosure actions,
- bankruptcy cases,
- probate proceedings, or
- other legal proceedings.

This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of our interests in the foreclosure, bankruptcy, probate, or other legal proceeding. When Fannie Mae transfers possession, the servicer becomes the holder of the note as follows:

- If a note is held at Fannie Mae's document delivery facility, Fannie Mae has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit.
- If the note is held by a document custodian on Fannie Mae's behalf, the custodian also has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit.

**Physical Possession of the Note by the Servicer**
In most cases, a servicer will have a copy of the mortgage note. If a servicer determines that it needs physical possession of the original note to represent Fannie Mae's interests in a foreclosure, bankruptcy, probate, or other legal proceeding, the servicer may obtain physical possession of the original note.

If Fannie Mae's possession of the original note is direct because the custody documents are at its document delivery facility, the servicer should submit a request to obtain the original note and any other custody documents that are needed to the Custody Department through the Loan Document Request System (LDRS) on Fannie Mae's Web site (www.efanniemae.com).

If Fannie Mae possesses the original note through a third party document custodian that has custody of the note, the servicer should submit a *Request for Release/Return of Documents* (Form 2009) to Fannie Mae's custodian to obtain the note and any other custody documents that are needed.

In either case, the servicer should specify whether the original note is required or whether the request is for a copy.

**Reversion of Possession to Fannie Mae**
At the conclusion of the servicer's representation of Fannie Mae's interests in the foreclosure, bankruptcy, probate, or other legal proceeding, or upon the servicer ceasing to service the loan for any reason, possession automatically reverts to Fannie Mae, and Fannie Mae resumes being the holder, just as it was before the foreclosure, bankruptcy, probate, or other legal proceeding. If the servicer has obtained physical possession of the original note, it must be returned to Fannie Mae or the document custodian, as applicable. The temporary transfer of possession, and any reversion of possession to Fannie Mae, are evidenced and memorialized by this Section of the *Guide*. This *Guide* provision may be relied upon by a Court to establish that the servicer conducting the foreclosure, bankruptcy, probate, or other legal proceeding in its name has possession, and is the holder, of the note during the foreclosure, bankruptcy, probate, or other legal proceeding, unless the Court is otherwise notified by Fannie Mae.

## Revised *Servicing Guide* Section

Fannie Mae is amending the existing *Servicing Guide* section that currently references the note holder provision for foreclosures. Pertinent information from this section has been removed and incorporated into the new section above. The revised section that follows replaces in its entirety the existing section in the *Servicing Guide* and servicers should refer to this Announcement regarding this topic until the Servicing Guide is updated at a future date.

*Servicing Guide*, **Part VIII, Chapter 1, Section 102: Initiation of Foreclosure Proceedings**

**Foreclosure Proceedings for First Mortgage Loans**
Foreclosure proceedings for a first mortgage can begin whenever at least three full monthly installments are past due. Foreclosure proceedings may begin at once for any mortgage if the borrower is not eligible for relief from foreclosure under the Soldiers' and Servicemembers Civil Relief Act (or any state law that similarly restricts the right to foreclose) and the property has been abandoned or vacated by the borrower and it is apparent that the borrower does not intend to make the mortgage payments. In addition, foreclosure proceedings for any mortgage may be started immediately if

- the borrower was advised in writing of the relief provisions that were available and his or her written response indicated a lack of interest in fulfilling the mortgage obligation (or gave permission for the commencement of foreclosure proceedings, if the borrower was subject to the provisions of the Servicemembers Civil Relief Act or any state law that similarly restricts the right to foreclose); or

- income from rental of the property is not being applied to the mortgage payments and arrangements cannot be made to apply it, and it has been established that the borrower is not eligible for relief under the Servicemembers Civil Relief Act or any state law that similarly restricts the right to foreclose. (Refer to Part III, Chapter 1, Exhibit 1 for additional information.)

Fannie Mae requires a servicer to contact its servicing consultant, portfolio manager, or Fannie Mae's Servicing Solutions Center before it initiates foreclosure proceedings for an eMortgage. If the security property is located in a state in which there are Fannie Mae-retained attorneys (or trustees), the servicer must use one of the firms we have retained for the state. If there are not any Fannie Mae-retained attorneys (or trustees) designated for the state in which the security property is located, the servicer may retain its own attorney, but Fannie Mae will require that attorney to work closely with an attorney that Fannie Mae designates.

**Foreclosure Proceedings for Second Mortgages**
Foreclosure proceedings for a second mortgage can begin when at least two full monthly installments are past due. As long as the servicer has complied with the requirements of the Servicemembers Civil Relief Act (if applicable) and any state law that restricts the right to foreclose, it can start foreclosure proceedings for a second mortgage immediately if the first mortgage is in default and the second mortgage instrument includes a provision that the second mortgage will be considered in default, regardless of the status of its payments, if the first mortgage is in default.

**Physical Possession of the Note by the Servicer**
In most cases, a servicer will have a copy of the mortgage note that it can use to begin the foreclosure process. However, some jurisdictions require that the servicer produce the original note before or shortly after initiating foreclosure proceedings.

If Fannie Mae's possession of the note is direct because the custody documents are at the document delivery facility, to obtain the note and any other custody documents that are needed, the servicer should submit a request to the Custody Department through the Loan Document Request System (LDRS) on Fannie Mae's Web site (www.efanniemae.com).

If Fannie Mae possesses the note through a document custodian that has custody of those documents, to obtain the note and any other custody documents that are needed, the servicer should submit a *Request for Release/Return of Documents* (Form 2009) to Fannie Mae's custodian.

In either case, the servicer should specify whether the original note is required or whether the request is for a copy.

## Effective Date

The changes outlined in this Announcement are effective immediately.

* * * * *

Servicers should contact their Servicing Consultant, Portfolio Manager, or Fannie Mae's National Servicing Organization's Servicing Solutions Center at 1-888-326-6438 if they have questions about Announcement 08-12.


Michael A. Quinn
Senior Vice President
Single-Family Risk Officer